Glenard E. LANIER, et al., Plaintiffs,

v.

The DISTRICT OF COLUMBIA and, The United States of America, Defendants.

Civ. A. No. 94–0013.

United States District Court, District of Columbia.

Dec. 14, 1994.

Robert Edward Deso, Jr., Mitchell Bruce Weitzman, Deso, Thomas & Rost, Washington, DC, for Glenard E. Lanier, James C. Campbell, Kenneth O. Beckwith, Anthony S. Giglio, Donald L. Keller, Franklin C. Beal, William G. Roode, Terri L. Jordan, James A. Miller, Joe D. Smith, John G. Grubbs, and Gary D. Workman.

Carol Elaine Burroughs, Office of Corp. Counsel, D.C., Washington, DC, for District of Columbia.

Robert Lawrence Shapiro, Douglas A. Wickham, U.S. Attorney's Office, Washington, DC, for U.S.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Plaintiffs' motion for summary judgment and Defendant United States' cross-motion to dismiss. This case presents an issue of statutory construction. Plaintiffs are all retired members of the U.S. Secret Service Uniformed Division ("Secret Service"). Although they were federal employees, their retirement is governed by the District of Columbia Police and Firefighters Retirement and Disability Act ("District Retirement Act"), D.C.Code §§ 4–601 through 4–634. The issue presented to the Court is whether pursuant to the District Retirement Act's "equalization provision," § 4–605(c), the plaintiffs' retirement pay should be increased to reflect the "locality pay adjustments" given to active duty officers of the Secret Service.

## SUMMARY JUDGMENT STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In this case, there are no genuine issues of material fact and the issue before the court is solely one of law.

## FACTUAL BACKGROUND

Plaintiffs, who are retired members of the Secret Service, are covered by the District of Columbia Police and Firefighters Retirement and Disability Act ("District Retirement Act"), §§ 4–601 through 4–634. At the time of their retirement, all plaintiffs were serving in the Washington, D.C.—Maryland—Virginia Statistical Metropolitan Area ("Washington, D.C"). See Plaintiff's Statement of Material Facts No. 3. Sixty-four percent of the plaintiff class, which is 311 plaintiffs, currently reside in the Washington, D.C. area. See Plaintiffs' Statement of Material Facts No. 5.

Under the Federal Law Enforcement Pay Reform Act of 1990 ("FLEPRA"), incorpo-

rated as Title IV of the Federal Employees Pay Comparability Act of 1990 ("FEPCA") (codified at 5 U.S.C. § 5304), federal law enforcement officials, including active members of the Secret Service, were given special adjustments in salary in certain cities to reflect the higher cost of living in those cities. The locality pay increase in Washington, D.C. was set at 4% by 404(b)(1) of FEPCA, 5 U.S.C. § 5305. The active members of the Secret Service began receiving these benefits on the first pay period after January 1, 1993. See Plaintiffs' Statement of Material Facts No. 11.

Plaintiffs argue that pursuant to the "equalization provision" in the District Retirement Act, D.C.Code § 4–605(c), they are entitled to have their retirement pensions increased by 4% to reflect the "locality pay adjustment" given to active members.[1]

### ANALYSIS AND DECISION

The "equalization provision" provides:

Each individual retired from active service and entitled to receive a pension allowance or retirement compensation under §§ 4–607 to 4–630 shall be entitled to receive, without making application therefore, with respect to each **increase in salary, granted by any law** which takes effect after the effective date of the District of Columbia Police and Firemen's Salary Act Amendments of 1972, to which he would be entitled if he were in active service, an increase in his pension relief allowance or retirement compensation computed as follows: His pension relief allowance or retirement compensation shall be increased by an amount equal to the product of such allowance or compensation and the per centum increase made by such law in the **scheduled rate of compensation** to which he would be entitled if he were in active service on the effective date of such **increase in salary.**

§ 4–605(c) (Emphasis added).

■ Principles of statutory construction dictate that the Court is to interpret a statute according to its plain terms. *American*

*Tobacco Co. v. Patterson,* 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748. In analyzing the meaning to be attached to particular phrases, it is necessary to view the statute as a whole, informed by its overall purpose and objective. See *In Re Mitchell,* 977 F.2d 1318, 1320 (9th Cir.1992) ("particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme."); *Tataranowicz v. Sullivan,* 959 F.2d 268, 276 (D.C.Cir.1992) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.")

■ The plain terms of the statute indicate that the retirees are to receive commensurate percentage increases in their retirement compensation for **"each increase in salary, granted by any law** ... to which he would be entitled if he were in active service...." (emphasis added.) The Court finds that the 4% locality increase is an "increase in salary granted by law" to which active members in the Washington, D.C. area are entitled. A plain reading of the phrase "increase in salary" would include any increase in the amount that a worker receives in pay.

The government contends that the equalization provision limits the type of salary increases to which retirees are entitled to benefit from only to those increases "in the scheduled rate of compensation" and that a locality increase is not such an increase in the "scheduled rate of compensation."

■ This contention fails on several counts. First, the term, "scheduled rate of compensation," is no where defined by statute. Second, it is clear that this language is meant to be merely instructive as to how to apply the provision and is not meant to limit the coverage of the provision in any regard.

The legislative history supports the Plaintiffs' interpretation of the statute. The Report from the Committee on the District of

---

1. Pursuant to D.C.Code §§ 4–607(1) and (10), the District of Columbia administers the retirement payments, while the United States provides the funds for the pension payments under D.C.Code § 4–632. Hence, both have been named as defendants in this case.

Columbia states that the equalization provision provides that

in the event of **future salary increases** for active members, the annuities of members then retired shall continue to be increased by a percentage not less than the percentage increase in salary for the class and step to which such retirees are assigned for annuity increase computation purposes.

H.R. No. 92–1180, Salary Increases for District of Columbia Police and Fireman, June 27, 1972, Title I, § 114 (emphasis added). The equalization provision is one type of retirement system that Congress has adopted. The increases that the retirees receive through this equalization provision "are the only source of increases in annuities granted to retired D.C. policemen and firemen to offset increased costs of living, as they do not benefit from periodic cost-of-living adjustments as do retirees under Civil Service and other retirement systems." *Id.* *See also,* S.R. No. 92–994, Title I, § 115.

The House and Senate Committee Reports provide no hint that the "scheduled rate of compensation" phrase was meant to be limiting or that the equalization provision should in some way not cover across the board salary increases whether it be labelled locality pay or given some other designation. The Reports suggest percentage increases in salaries are to be given pro rata to the retirees as an alternative to so-called cost-of-living adjustments.

Defendant argues that retirees should not be entitled to benefit from all across the board increases in salary given to active members. While this may be so, the statutory language does not support this contention. Defendant's argument is more appropriately addressed to the Congress. Any tinkering with the equalization provision must be accomplished by corrective legislation.

■ Plaintiffs' position is further bolstered by the fact that the locality increases for active members are built into the salary structure and are to be "considered part of basic pay for purposes of retirement" as well as for purposes of life insurance and premium pay.[2] The locality increase serves to increase "basic pay" and as such can be deemed an increase in the "scheduled rate of compensation."[3] Since those who "retire tomorrow" will have the locality increase factored into their retirement pay, it can be argued that it would be unfair to treat differently those who "retired yesterday." This was the basis for enacting the equalization provision.

This case involves the clash of two worthwhile principles. On the one hand, Congress has enacted the so-called "equalization provision" to make sure that those who served this nation as protectors of the public are fairly treated in their retirement years. This has been accomplished by enacting into law a provision that passes along to retirees "an increase in their retirement pay" commensurate to across the board increases received by active officers.

On the other hand, if our citizens are to be protected the government must be able to recruit law enforcement officers in high cost of living areas. This is accomplished by providing for locality pay incentives. Obviously, the government should be able to provide incentives without having to adjust the pay of retirees who have the unrestricted ability to chose where they want to spend their retire-

2. 5 U.S.C. § 5304(c)(2)(A) provides: "A comparability payment—(A) shall be considered to be part of basic pay for purposes of retirement under chapter 83 or 84, as applicable, life insurance under chapter 87, and premium pay under subchapter V of chapter 55 and for such other purposes as may be expressly provided for by law or as the Office of Personnel Management may by regulation prescribe;" Section 404(c)(1) of Title IV of P.L. 101–509 ("FLEPRA") provides: "A special pay adjustment under this section shall be administered, to the extent practicable, in the same manner as a locality-based comparability payment under section 5304 of title 5, United States Code, as amended by section 101 of this ACT, and shall be considered part of basic pay to the same degree as such a locality-based comparability payment."

3. The locality increase works in this way. On a base salary of $10,000, a 4% locality pay incentive would increase the base salary to $10,400. In year 2, a 6% increase would provide the employee with an annual pay of $11,024. Each increase gets factored into the base salary and as such gets built into the employees' compensation for determining such items as retirement pay and life insurance proceeds.

**24**

ment years. To do so, the government must enact legislation that makes its intent clear. The government cannot rely on courts to rewrite imprecise enactments.

█ Based on the foregoing, the Court finds that the retirees' retirement compensation should be increased to reflect the locality increases given to active members.[4]

An appropriate order accompanies this memorandum opinion.

### ORDER

This matter is before the Court upon the parties' cross motions for summary judgment and the oppositions thereto. Having considered the motions and the oppositions, and the record, and it appearing to the Court that there are no material factual issues in dispute and that plaintiffs are entitled to judgment as a matter of law, it is by the Court this 15th day of December, 1994,

**ORDERED:** that the Plaintiffs' Motion for Summary Judgment be and the same is hereby granted; and it is,

**FURTHER ORDERED:** that pursuant to the equalization provision of the District Retirement Act, D.C.Code § 4–605(c), plaintiffs shall be granted an increase in their annuity compensation equal to the amount of the locality pay paid to active members of the U.S. Secret Service Uniformed Division performing duty in the Washington metropolitan area; and it is,

**FURTHER ORDERED:** that plaintiffs shall be granted an adjustment in their annuity for locality pay retroactive to the first day of the first month following the first month that such locality pay was granted to active members of the U.S. Secret Service Uniformed Division performing duty in the Washington metropolitan area, pursuant to D.C.Code § 4–605(d).

---

4. The GAO issued a letter opinion holding that retirees should not get the increase in their retirement compensation due to the locality adjustment given to active members. See Plaintiff's

---

Exhibit 1. This decision was based on the "scheduled rate of compensation" language. As conceded by both parties, this Court is not bound by this decision and chooses not to follow it.