P. Hamilton BROWN, et al., Plaintiffs,

v.

Lawrence H. SUMMERS, Secretary, Department of Treasury, et al., Defendants.

No. CIV.A. 98–1282(JR).

United States District Court, District of Columbia.

March 27, 2002.

Michael Jeffrey Kator, Kator, Scott & Parks, Washington, DC, Counsel for Plaintiffs.

Susan K. Ullman, Department of Justice, Civil Division, Washington, DC, Counsel for Defendants.

*MEMORANDUM*

ROBERTSON, District Judge.

Plaintiffs are retired Secret Service criminal investigators whose retirement annuities are governed by the District of Columbia Police and Firefighters Retirement and Disability Act, D.C.Code §§ 5–701 *et seq.* Their dispute with the District and with the Department of Treasury concerns the calculation of their benefits. They maintain that the locality pay component of each retired investigator's annuity should be calculated using the locality pay in effect at the location of his or her last active job assignment, and not, as the Treasury Department maintains, using a weighted national average locality pay. The parties have filed cross motions for summary judgment. For the reasons set forth below, the plaintiffs' motion will be granted. The defendants' will be denied.

### *Background*

For most of the twentieth century, the U.S. Secret Service overlapped significantly with the District of Columbia police department in personnel, duties, and employment benefits. *See generally Floyd v. District of Columbia,* 129 F.3d 152, 154 (D.C.Cir.1997). There is overlap in the retirement systems as well, and Secret Service agents hired before 1984 with ten years of "protective service" may convert from the federal retirement system to the higher-paying District of Columbia retirement system. D.C.Code § 5–703. The statute that permits this arrangement assigns the responsibility for administration of annuity payments to the District of Columbia and the Mayor, D.C.Code §§ 5–724, 5–743, and authorizes federal reimbursement of the District for any costs that exceed the agents' pension contributions. *Id.* § 5–732.

Unlike the federal retirement program, the D.C. retirement system does not provide directly for cost of living adjustments. Instead, it contains an "equalization clause," under which retirees

shall be entitled to receive, without making application therefor, with respect to each increase in salary, granted by any law ... to which he would be entitled if he were in active service, an increase in his pension relief allowance or retirement compensation computed as follows: His pension relief allowance or retirement compensation shall be increased by an amount equal to the product of such allowance or compensation and the *per centum* increase made by such law in the scheduled rate of compensation to which he would be entitled if he were in active service on the effective date of such increase in salary.

*Id.* § 5–745(c). This provision was intended to ensure that retirement benefits under the D.C. system would keep pace with rising costs. H.R.Rep. No. 92–1180, at 6 (1972).

The instant suit was filed in May 1998 to establish that locality pay increases that had been awarded to active agents in certain cities since 1991[1] were "increases in salary" subject to the equalization clause. It was dismissed without prejudice in December 1998 when Treasury agreed to include locality pay in retirement annuities, but reopened in July 1999 when plaintiffs still had not received adjustments for locality pay. Treasury then made its decision about *how* to factor locality pay into retirement annuities, and the focus of the

---

1. Employees in New York City, San Francisco, and Los Angeles received one-time locality adjustments in 1991, and Congress authorized locality pay for eight cities in 1992. Pub.L. No. 101–509, § 529, 104 Stat. 1389, 1462–63, 1466 (1990). In 1994 and each year thereafter, employees in 28 cities received locality adjustments. 5 U.S.C. § 5304 & Note.

suit shifted to Treasury's methodology—which was to calculate a national weighted average locality pay increase for Secret Service agents for each year since 1991 and to apply it across the board.[2] The defendants provided lump sum backpayments to all retirees and then used the national weighted average method to adjust annuity benefits for 1999 and each subsequent year.

The adoption of the weighted average method forced the withdrawal of plaintiffs' counsel in January 2000, because the conflict of interest between those plaintiffs who benefitted from the national weighted average system and those who were dissatisfied with it was irreconcilable. In May 2000, new counsel appeared on behalf of those plaintiffs contending for a locality pay component based on the locality pay at the place of the agent's last active assignment. Those plaintiffs amended their complaint in November 2000. A defense motion to dismiss was denied in May 2001.

### Analysis

■ Defendants assert that this case is governed by the familiar standards established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and argue for deference to their national weighted average method. They maintain that their method is simpler to administer than an individualized calculation and more fair, because it spreads locality pay increases across all retirees to account for the fact that they would be subject to reassignment at any time if they were still on active status. This argument for deference is not persuasive. The District of Columbia, not the Treasury Department, is charged with determining pension allowances, promulgating rules, and otherwise implementing the District of Columbia Police and Firefighters Retirement and Disability Act. *Floyd v. District of Columbia*, 129 F.3d 152, 156–57 (D.C.Cir.1997) (District of Columbia is not a federal agency or instrumentality under the Act); *see also Ass'n of Civilian Technicians v. Federal Labor Relations Auth.*, 269 F.3d 1112, 1115 (D.C.Cir.2001) (interpretations of statutes not committed to an agency's administration reviewed *de novo*). Moreover, the Treasury Department's decision to adopt the national weighted average method was not the product of formal notice-and-comment rulemaking, and there are no other indications that Congress intended that *Chevron* deference apply. *United States v. Mead Corp.*, 533 U.S. 218, 229–31, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Indeed, the defendants promulgated their calculation method informally, during the course of this litigation. *Cf. Federal Labor Relations Auth. v. United States Dept. of Treasury, Financial Mgmt. Serv.*, 884 F.2d 1446, 1455 (D.C.Cir.1989) (agency litigation positions are often not accorded deference where there is a risk that the positions have been developed under special pressure or without adequate opportunity for the presentation of opposing views).[3]

---

2. The calculation is based on the locality rates paid to active Secret Service agents at all posts across the country, weighted to reflect the number of agents actually serving in each locality. The determination is made in three steps: (1) For each locality receiving locality pay, the defendants multiplied the percentage pay increase by the number of Secret Service agents in eligible job series that were assigned to the locality in 1999.(2) The products of Step 1 were added together across all of the localities receiving locality pay. (3) The total in Step 2 was divided by the total number of eligible Secret Service agents employed by the United States in 1999 (2,826 employees).

3. Both parties focus their arguments on the so-called "Killefer letter" issued December 9, 1998, from Assistant Secretary and Chief Financial Officer Nancy Kelleher to the District

As a fallback argument, the defendants assert that the Treasury Department's methodology is entitled to deference under *Skidmore v. Swift Co.*, 323 U.S. 134, 139–40, 65 S.Ct. 161, 89 L.Ed. 124 (1944), because it possesses "a body of experience and informed judgment." *See also Mead*, 533 U.S. at 234, 121 S.Ct. 2164 (*Skidmore* deference may still be due where *Chevron* does not apply). The weight of *Skidmore* deference depends, however, on "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161. No deference at all is due to an agency interpretation that conflicts with the plain language of a statute. *Public Employees Retirement Sys. v. Betts*, 492 U.S. 158, 171, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989).

The plain language of the statute in question does not allow averaging or aggregating locality pay. Instead, it requires individualized calculations based on factors individual to each retiree. It provides that "*[e]ach individual retire[e] . . .* shall be entitled to receive . . . an increase in his pension relief allowance or retirement compensation . . . equal to the product of such allowance or compensation and the *per centum* increase . . . in the scheduled rate of compensation to which *he would be entitled* if he were in active service on the effective date of such increase in salary." D.C.Code § 5–745(c) (emphasis added). If any individual retiree is receiving a percentage increase equal to what he or she would have received as an active agent today, however, it is merely

by coincidence. Except for such a coincidental match, the averaging method will always result in a payment that is either too high or too low.

The statutory requirement that calculations be individual cannot be squared with the weighted average method now employed by the defendants. Neither, however, does the statute command a specific method of determining what locality will be the basis for calculating the retirement benefit of any individual retiree. Plaintiffs' submission—that the correct locality is the place where an agent is serving when he or she retires—is argument without any specific support in the language of the statute. Plaintiffs' way is not the only way to comply with the statute's mandate of individualized determinations.

The unfortunate result must be a judgment declaring that the Treasury Department's present weighted average method for calculating locality pay is unlawful, but putting nothing in its place. It is for the defendants, and not this Court, to fashion a method that complies with the statute. As Judge Sporkin noted, if Congress is dissatisfied with the inefficiencies or inequities of the system that it has created, then it is up to Congress to change the situation. *Lanier v. District of Columbia*, 871 F.Supp. 20, 23–24 (D.D.C. 1994). The plain meaning of legislation is conclusive except in "rare cases" in which literal application would produce a result clearly at odds with the intent of the drafters. The parties have presented no evidence of contrary intent, so the sole function of the Court is to enforce the plain language of the statute according to its terms. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–43, 109 S.Ct. 1026,

of Columbia. However, that letter did not explain the methodology for calculation locality pay; it merely announced Treasury's decision to reimburse for locality pay as part of

retirees' annuities and requested consultation with the District in determining how the calculations should be made.

103 L.Ed.2d 290 (1989) (citations and internal quotations omitted).

An appropriate order accompanies this memorandum.

### ORDER

For the reasons set forth in the accompanying memorandum, it is this _____ day of March 2002,

ORDERED that plaintiffs' motion for partial summary judgment [# 70] is **granted.** And it is

FURTHER ORDERED that defendants' motion for summary judgment [# 71] is **denied.** And it is

FURTHER ORDERED that the parties appear April _____, 2002, at _____ for a status conference.