# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 02-5193        **September Term, 2002**

98cv01282

Filed On: May 6, 2003

P. HAMILTON BROWN, ET AL.,

APPELLEES

v.

UNITED STATES OF AMERICA AND THOMAS J. RIDGE,
SECRETARY, DEPARTMENT OF THE TREASURY,
APPELLANTS

DISTRICT OF COLUMBIA,
APPELLEE

————

Consolidated with 02–5194

————

**BEFORE**: SENTELLE and ROGERS, Circuit Judges, and
SILBERMAN, Senior Circuit Judge

# O R D E R

It is, **ORDERED** that the court's opinion filed on May 2,
2003, be amended as follows:

The appellants' designation in the caption of the opinion
should read:

United States of America and Thomas J. Ridge, Secretary, Department of Homeland Security

**<u>Per Curiam</u>**

**FOR THE COURT:**

Mark J. Langer, Clerk

BY:

Michael C. McGrail
Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued April 7, 2003          Decided May 2, 2003

No. 02-5193

P. HAMILTON BROWN, ET AL.,
APPELLEES

v.

UNITED STATES OF AMERICA AND
THOMAS J. RIDGE, SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
APPELLANTS

DISTRICT OF COLUMBIA,
APPELLEE

————

Consolidated with
No. 02-5194

————

Appeals from the United States District Court
for the District of Columbia
(No. 98cv01282)

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Robert D. Kamenshine*, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *William Kanter*, Deputy Director.

*Michael J. Kator* argued the cause and filed the brief for appellees.

Before: SENTELLE and ROGERS, *Circuit Judges,* and SILBERMAN, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* ROGERS.

Concurring opinion filed by *Senior Circuit Judge* SILBERMAN.

ROGERS, *Circuit Judge*: This case concerns the Treasury Department's attempt to overcome the conceptual incompatibility of two statutes. Specifically at issue is Treasury's selection of a "weighted national average" methodology to calculate locality pay increases under the Federal Law Enforcement Pay Reform Act of 1990 ("FLEPRA"), incorporated as Title IV of the Federal Employees Pay Comparability Act of 1990, Pub. L. No. 101–509, 104 Stat. 1389 (1990) (codified at 5 U.S.C. § 5304 (2000)), for retired Uniformed Division Secret Service agents who receive annuities under the District of Columbia Police and Firefighters Retirement and Disability Act ("DCRA"), D.C. Code Ann. § 5–701 *et seq.* (2001). The conceptual difficulty arises because locality pay increases are geographically fixed while the DCRA's equalization provision is based on the salary of an agent in active service. Notwithstanding the fact that Secret Service agents have postings throughout the United States and overseas, Treasury has determined that locality pay applies to DCRA Secret Service retirees. Hence, no issue is before the court regarding the entitlement of those retirees to locality pay adjustments. Rather, when Treasury determined it would apply the "weighted national average" methodology, a number of DCRA Secret Service retirees filed suit, and the district court invalidated Treasury's methodology. *Brown v. Summers*, 201 F. Supp. 2d 60, 63–64 (D.D.C. 2002). Treasury, joined by the United States and the District of Colum-

bia, appeals that judgment and contends that in light of the conceptually difficult task of calculating locality pay increases for retirees that track those of active agents, Treasury's methodology is fair and valid. We hold, first, that Treasury – as opposed to the District of Columbia – is the proper locus of decisionmaking for calculating the amount of locality pay for Secret Service retirees who have opted to retire under the DCRA. We hold second, that whether viewed as filling a gap in the DCRA's equalization clause or as resolving an ambiguity arising from the confluence of two statutes, Treasury's methodology is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944). Accordingly, we reverse.

## I.

In *Floyd v. District of Columbia*, 129 F.3d 152, 154 (D.C. Cir. 1997), the court recounted Congress' determination that, in light of the Secret Service's unique ties to the District of Columbia Metropolitan Police Department, Secret Service agents who performed non-clerical duties related to the protection of the President for ten or more years could convert their retirement from the Federal Employee Retirement System, 5 U.S.C. § 8401 *et seq.* (2000), to the higher-paying plan governed by the DCRA, D.C. Code Ann. § 5–701 *et seq. See* D.C. Code Ann. § 5–703. Unlike the federal system, which provides for cost-of-living adjustments, 5 U.S.C. § 8462, the DCRA contains an "equalization clause" that automatically increases retired agents' pensions each time active agents receive salary increases. The equalization provision provides:

> Each individual retired from active service and entitled to receive a pension relief allowance or retirement compensation under subchapter I of this chapter shall be entitled to receive, without making application therefor, with respect to *each increase in salary*, granted by any law which takes effect after the effective date of the District of Columbia Police and Firemen's Salary Act Amendments of 1972, to which he would be entitled *if he were in active service*, an increase in his pension relief

> allowance or retirement compensation computed as follows: His pension relief allowance or retirement compensation shall be increased by an amount equal to the product of such allowance or compensation and the per centum increase made by such law in the scheduled rate of compensation to which he would be entitled *if he were in active service* on the effective date of such *increase in salary*.

D.C. Code Ann. § 5–745(c) (emphasis added).

Locality pay for Secret Service agents was first authorized by Congress when it enacted FLEPRA in 1990. Under FLEPRA, federal law enforcement officials, including active members of the Secret Service, are paid a percentage of "basic pay" in addition to their rate of pay under the General Schedule to reflect the higher cost of living in specified geographic areas. Since 1994, employees in twenty-eight cities have received locality pay increases, which the Office of Personnel Management ("OPM") adjusts annually. 5 U.S.C. § 5304 and note.

In May 1998, certain retired Secret Service agents, who were employed as criminal investigators at the time of their retirement and whose annuities are governed by the DCRA, filed suit against Treasury, the United States, and the District of Columbia (collectively "the government"), claiming that locality adjustments awarded to active agents pursuant to FLEPRA were "increases in salary" subject to the DCRA's equalization clause. The district court dismissed the case without prejudice in December 1998, subject to reopening within six months, when Treasury agreed to include locality pay increases in the retirees' annuities. *Letter of December 9, 1998, from Nancy Killefer, Assistant Secretary, Dep't of Treasury, to Earl Cabbell, Interim Chief Financial Officer, District of Columbia* ("the Killefer letter"), *reprinted in* Joint Appendix ("J.A.") at 110–15. The case was reopened in July 1999, when the retirees had not received locality pay increases.

Treasury subsequently determined it would award each retiree locality pay increases based on a "weighted national

average" of locality adjustments for active Secret Service agents since 1991. The calculation under this methodology was based on the locality pay increases paid to active Secret Service agents throughout the United States, weighted to reflect the number of agents actually serving in each locality receiving increases. Treasury then awarded lump sum back payments to all DCRA Secret Service retirees, and used the "weighted national average" method to adjust annuity benefits for 1999 and each subsequent year. Although this method benefitted some retirees, others would have fared better had the locality pay increase been determined by the location of their last post of duty. In January 2000, the district court granted the motion of plaintiff retirees' counsel to withdraw due to the "irreconcilable" conflict of interest between the retirees.

In May 2000, retirees who were disadvantaged by the "weighted national average" methodology appeared before the district court with new counsel, who filed an amended complaint claiming that the locality pay increases reflected in their DCRA retirement benefits should be computed on the basis of the locality pay in effect at their last post of duty. The district court denied the government's motion to dismiss, and ruled, on cross-motions for summary judgment, that Treasury's "weighted national average" methodology was not entitled to judicial deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), or *Skidmore*, 323 U.S. at 139. *Brown*, 201 F. Supp at 62–63. The court concluded that the District of Columbia, rather than Treasury, is responsible for DCRA's implementation, and that the plain language of DCRA's equalization clause "requires individualized calculations based on factors individual to each retiree." *Id.* The court invalidated Treasury's method, but declined to replace it with the "last post of duty" method, explaining that the latter "is without any specific support in the language of the statute," and that the "plaintiffs' way is not the only way to comply with the statute's mandate of individualized determinations." *Id.* at 63. The court entered partial summary judgment for the retirees and remanded the case to Treasury and the District of Columbia

to "fashion a method that complies with the statute." *Id.* at 63–64.

## II.

On appeal, the government contends, as it did in the district court, that Treasury's "weighted national average" methodology deserves deference under *Chevron*, 467 U.S. at 843, or alternatively, deference equal to its power to persuade under *Skidmore*, 323 U.S. at 139. Either position requires the court to determine whether (1) Treasury – as opposed to the District of Columbia – is the locus of decisionmaking with regard to locality pay for DCRA Secret Service retirees, and (2) the DCRA plainly prohibits the use of a "weighted national average" to calculate locality pay increases for such retirees.

Although a remand order does not usually signify a final decision for purposes of conferring jurisdiction on this court under 28 U.S.C. § 1291 (2000), *NAACP v. United States Sugar Corp.*, 84 F.3d 1432, 1436 (D.C. Cir. 1996), the court may exercise jurisdiction "where the agency to which the case is remanded would have no opportunity to appeal after the proceedings on remand." *Los Angeles v. Shalala*, 192 F.3d 1005, 1012 (D.C. Cir. 1999) (quoting *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 330 (D.C. Cir. 1989), *cert. denied*, 530 U.S. 1204 (2000)). Because the district court invalidated Treasury's method for calculating locality adjustments, and remanded with instructions to select a new methodology, which Treasury views as "a new choice from among what [it has] considered to be less desirable alternatives," Appellant's Br. at 4, Treasury contends, and we agree, that this appeal represents its only opportunity to challenge the district court's ruling. Therefore, the court has jurisdiction under the exception recognized in *Shalala*, 192 F.3d at 1012, and *Occidental Petroleum*, 873 F.2d at 330.

## A.

In *Floyd*, the court left open the question of whether the United States or the District of Columbia is responsible for

making substantive decisions about Secret Service annuity adjustments under the DCRA. *Floyd*, 129 F.3d at 156. Then, as now, the District of Columbia asserted that "the United States makes all substantive decisions about Secret Service pensions under the DCRA and that the District serves as a mere conduit for federal pension monies." *Id.* The court in *Floyd* noted, however, that it found nothing in the DCRA or the record explicitly limiting the District of Columbia to a passive role. *Id.* By contrast, the record in the instant case indicates that the District of Columbia does not make substantive decisions about Secret Service annuities under the DCRA, but instead has a role that is "purely ministerial, not discretionary." D.C.'s Mem. in Supp. of Motion to Dismiss. Although the District of Columbia issues annuity payments to Secret Service retirees under the DCRA, it has no financial stake in the amount of those payments, which are determined by the United States and reimbursed to the District of Columbia by the United States. *See* D.C. Code §§ 5–703, 5–732. As the District of Columbia told the district court, it "simply acts as an administrator" of the annuity program, "and is, at most, a conduit for those federal funds, paying them out as the federal government directs." D.C.'s Mem. in Supp. of Motion to Dismiss. Treasury agrees with this position, and the District of Columbia filed a statement in this appeal that its "interest is adequately served by the United States." None of the parties suggest that a federal agency other than Treasury is the proper locus of decisionmaking or is responsible for funding annuities for DCRA Secret Service retirees.

The Killefer letter, relied on by the retirees, is not to the contrary. Indeed, the letter emphasizes the extent to which Treasury controls decisionmaking related to DCRA annuities for Secret Service retirees. Noting that "questions have been raised . . . concerning annuities" under the DCRA, Treasury advised the District of Columbia of its conclusion that "locality pay . . . is sufficiently akin to salary that it should be included in the calculation of retirees' annuity increases." The letter further requests that "the District [of Columbia] not alter any current practice with respect to implementation

of this retirement system without prior discussions with [Treasury]," and explains that Treasury will "assist the District of Columbia in determining how best to calculate increased annuities based on locality pay." If the District of Columbia were making substantive decisions about Secret Service annuities under the DCRA, as the retirees contend, it would be illogical for the District of Columbia to require Treasury's authorization before changing its practices with regard to annuity payments. The Killefer letter thus substantiates that Treasury – as opposed to the District of Columbia – makes substantive decisions about Secret Service annuity adjustments under the DCRA.

While there may be joint actions by the United States and the District of Columbia to ensure that DCRA Secret Service retirees receive their benefits, and this is likely to entail cooperative arrangements, the financial control and the substantive determination, based on an interpretation of a separate federal law such as FLEPRA, rests with the United States – in this case Treasury – not the District of Columbia. When Congress authorized certain Secret Service agents to opt into the DCRA, it neither required the District of Columbia to assume the costs of paying the benefits for these additional annuitants, nor authorized the District of Columbia to determine the amount of those benefits arising under separate federal statutes. *See* D.C. Code §§ 703, 732. What the parties' conduct demonstrates is consistent with the District of Columbia having neither a regulatory role nor a financial stake in the determination of locality pay increases for DCRA Secret Service retirees. This, in turn, is consistent with Congress' decision to afford a generous retirement option for certain agents at federal expense. D.C. Code § 5–703. The district court erred in finding otherwise.

**B.**

This court is not presented with the question of whether, pursuant to the DCRA's equalization clause, federal DCRA annuitants are entitled to FLEPRA locality adjustments. In *Lanier v. District of Columbia*, 871 F. Supp. 20 (D.D.C.

1994), the district court ruled that under the equalization clause, DCRA Secret Service retirees are eligible for locality pay increases given to active agents receiving such adjustments under FLEPRA. *Id.* at 24; *see also District of Columbia v. Tarlosky,* 675 A.2d 77, 80–81 (D.C. 1996). That the government did not appeal the decision in *Lanier* does not alone prove its acquiescence in the judgment. *Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 94 n.27 (D.C. Cir. 1980). Nor, inasmuch as the instant appeal arises from a different lawsuit, is Treasury barred by law of the case or waiver from challenging eligibility. *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739–40 (D.C. Cir. 1995). Rather, its subsequent determination in the Killefer letter represents Treasury's position that Secret Service DCRA annuitants are entitled to locality pay adjustments, as the *Lanier* court ruled; it is on that determination that Treasury, as well as the United States and the retirees, relies in the instant case. Hence, the government has waived any challenge to the entitlement of DCRA Secret Service agents to locality pay.

The conceptual difficulty underlying Treasury's contention that the court should defer to its selection of a payment methodology underscores, however, that DCRA's equalization provision hardly appears to have been designed with locality pay in mind. Congress enacted the DCRA in 1916, and amended it in 1957 to allow participation by retired Secret Service agents. *See* Pub. L. No. 85–157 § 12(b), 71 Stat. 391, 392 (1957). Neither enactment indicates that Congress anticipated the adoption of FLEPRA in 1990 or the incorporation of locality pay increases into the DCRA. Nor did this change with enactment of the District of Columbia Retirement Protection Act of 1997, which provided a cost-of-living adjustment for retired D.C. Metropolitan Department police officers and D.C. firefighters under the DCRA, but expressly declined to amend the DCRA as it applied to Secret Services retirees. *Compare* Pub. L. No. 105–33, 111 Stat. 251, § 11013 (1997), *with id.* at § 11084(c).

The district court in *Lanier* aptly stated that there is a "clash of two worthwhile principles," one to ensure retirees are treated fairly in their retirement and one to provide

locality pay incentives to ensure adequate public protection. 871 F. Supp. at 23. The equalization clause provides that each Secret Service retiree shall receive an increase in his annuity equal to any increase in salary "to which he *would be entitled if he were in active service*." D.C. Code § 5–745(c) (emphasis added). Because active Secret Service agents move frequently, and sometimes to less desirable postings justifying additional salary incentives, any individual retiree's locality pay adjustment is by necessity a fictitious extrapolation of what "he would be entitled [to] if he were in active service." *Id.* The district court here recognized that if a DCRA retiree "is receiving a percentage increase equal to what he or she would have received as an active agent today, [ ] it is merely by coincidence." *Brown*, 201 F. Supp. 2d at 63.

Given the strange gap in the DCRA, a gap that Congress may not have intended to leave but one the court must address in light of Treasury's determination to award locality pay increases to DCRA Secret Service retirees, the court is unable to conclude that the DCRA's plain language prohibits Treasury's "weighted national average" methodology, much less that it requires only "individual determinations," as the district court ruled. Any sense that the DCRA was intended to include locality adjustments is betrayed by the fact that, because of the movement of Secret Service agents' duty assignments to over one hundred offices throughout the United States and overseas, no methodology can provide every retiree with the exact locality adjustment he would have received as an active agent. Indeed, to the extent the district court ruled that individualized locality adjustments were required, the government points out that:

> there is no way to ascertain the locality increase that the agent would *actually* receive if currently employed. Thus, *all* methods of adjustment are inherently flawed in terms of the "individualized" determination envisioned by the district court. And no method of approximation, no matter its merits, will be equally advantageous to all retirees.

Appellant's Br. at 14. Further, there is no merit to the retirees' attempt to distinguish between "room for application" and "ambiguity" arising from the confluence of the two statutes so far as the extension of deference to Treasury's methodology. In either circumstance, the DCRA must be construed to permit the exercise of reasonable judgment in closing the gap or resolving the ambiguity.

## C.

The question remains whether Treasury's "weighted national average" methodology is entitled to judicial deference. The government challenges the district court's ruling that *Chevron* deference is unavailable where, as here, Treasury's methodology was promulgated informally during the course of litigation, without notice-and-comment rulemaking. *Brown*, 201 F. Supp. at 62. Because we hold that Treasury's methodology satisfies the requirements for *Skidmore* deference, however, 323 U.S. at 139, we need not reach the question of *Chevron* deference.

Under *Skidmore*, the court grants an agency's interpretation only as much deference as its persuasiveness warrants. *Id*. In making its determination, the court must examine "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id*. at 140; *cf. Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Treasury's methodology for calculating locality pay increases satisfies the requirements for *Skidmore* deference.

The record demonstrates that Treasury examined five different methods for calculating locality pay increases before choosing the "weighted national average" methodology: (1) the annuitant's last post of duty; (2) the annuitant's residence; (3) the average of all locality pay rates across the country; (4) the locality pay rate in the District of Columbia; and (5) the "weighted national average." Treasury analyzed the various outcomes of each methodology, and noted, for example, that if the last post of duty was used, as the retirees

urged before the district court, "annuitants who retired from certain localities would not have received any locality pay increase." Treasury officials also consulted the OPM and engaged in discussions with the District of Columbia to devise appropriate procedures for effecting the increases before making its selection.

Moreover, Treasury's choice of the "weighted national average" method reflects its reasoned attempts to choose a calculation that mirrors the actual career experiences of agents moving from one locality to another. Although the government concedes that the use of averaging reduces the administrative burden associated with other methods, the affidavits from various Treasury officials, including the Supervisory Personnel Management Specialist and the Deputy Assistant Secretary for Human Resources, demonstrate that the principal reason for choosing that technique is that it is the "most equitable approach because all annuitants would receive some increase each year, regardless of where they might happen to have last worked or where they presently live." Treasury further explained that it "did not consider using more than one method of calculating locality pay increases for annuitants . . . . [because it] believes that the equalization provision and basic fairness require that a single method be applied to all annuitants." Moreover, Treasury noted, the use of a single annual percentage increase across the board is similar to across-the-board increases under many other retirement systems.

Finally, Treasury has "specialized experience" in calculating annuities, particularly those under the administratively complex DCRA. *United States v. Mead Corp.,* 533 U.S. 218, 234–35 (2001) (internal citation omitted). The Killefer letter indicates that Treasury regularly evaluates how other federal statutory schemes effect the DCRA annuity system, and often makes decisions about what national law requires.

In light of the fact that no locality adjustment can give the retirees exactly what they would be paid as active agents, Treasury's "weighted national average" methodology is a

persuasive solution to an unforeseen problem, and for all of the above reasons, it is entitled to *Skidmore* deference.

Accordingly, we reverse the judgment of the district court invalidating Treasury's methodology.

1

SILBERMAN, *Senior Circuit Judge, concurring*: I think Judge Rogers has ably analyzed the case before us, and I concur in the court's opinion. I write separately because I would go a step further and conclude the statute does not even cover locality pay. As such, the only possible challenge appellees could make under the APA to Treasury's determination that locality pay should be averaged for these Secret Service retirees is that the Treasury was arbitrary and capricious. They did not do so, and I do not see how such a challenge could have been successful.

I agree with the majority that it is certainly not open to us to *hold* that locality pay is not available to Secret Service Agents who chose to receive annuities under the DCRA. The Treasury Department acquiesced in the district court's ruling in *Lanier v. District of Columbia*, 871 F. Supp. 20 (D.D.C. 1994), to the effect that those retirees were entitled to locality pay increases under the equalization clause–as it was entitled to do. Accordingly, the government sought to accommodate that ruling by adopting the weighted average methodology. It did not even suggest in this case that the locality pay statute does not apply to appellees.

Still, we are not obliged, for purposes of this case, to accept the *Lanier* district court construction of the locality pay statute. It seems rather obvious to me, as the majority suggests, that the very fact that no one can even propose a persuasive methodology, including the district judge below, by which locality pay would apply to appellees demonstrates that Congress never intended locality pay to cover them. That is why the statute is silent on the issue.