**JONES AND ASSOCIATES, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 92–CV–1061.

District of Columbia Court of Appeals.

Argued March 23, 1994.

Decided May 26, 1994.

C. Hope Brown, for appellant.

Karen L. McDonald, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

Before SCHWELB, FARRELL, and WAGNER, Associate Judges.

SCHWELB, Associate Judge:

The District of Columbia brought this action against Jones and Associates, Inc. (Jones), on behalf of six of Jones' employees,[1] to recover overtime pay which Jones allegedly owed the employees for the period beginning January 1, 1987 and ending March 31, 1989. *See* D.C.Code § 36-220.2(c) (1993). Following a bench trial, the trial judge ruled in favor of the District. The judge held that Jones had not met its burden of showing that the employees fell within the statutory exemption for "bona fide executive, administrative or professional" employees. *See* D.C.Code § 36-220.3(a)(1) (1993) (incorporating 29 U.S.C. § 213(a) (1993)). On appeal, Jones contends that the trial judge erred as a matter of law by concluding that the employees were eligible to receive overtime pay. We affirm.

## I.

### THE FACTS[2]

The trial court found that, during the 27-month period to which this appeal pertains, Jones and Associates, Inc. was a private corporation which provided counselling and taught independent living skills to children in foster care who had been committed to the Department of Human Services pursuant to the District's child neglect laws. The company was founded in 1983 by Dr. James L. Jones, who was its president and who directed its operations.

Counsellors at the company worked in teams on one of three shifts. Each shift had a team leader, but the judge found that there was no rigid hierarchical structure within the organization. The teaching methods utilized by the counsellors were set forth in a manual developed by Dr. Jones. The counsellors taught life skills from the manual, but they were authorized to determine which skills should be taught to a particular client at any given time, and they exercised discretion in that regard.

The five Jones employees on whose behalf this proceeding was instituted included Marjorie McGaha, James Gates, Robert Parker, James Epps and Rev. Allen Horton. All five of these individuals were salaried employees. Each of them worked more than forty hours per week, and all except Rev. Horton earned more than $250 per week. The trial judge made the following written findings regarding the five complaining employees' duties:

(5) The employees Marjorie McGaha,[3] James Gates and Robert Parker[4] were team leaders. Their primary duties were to counsel the residents, work with social workers, attend administrative reviews and court proceedings and to "treat the child as their own." They were also responsible for completing work assignments on their shift. Work not completed would then be passed on to the next shift. The employees were not responsible for reviewing and evaluating the work of the employees on the different shifts.

(6) James Epps was responsible for transporting the residents to various activities.

(7) Allen Horton's primary duties were to ensure [that] residents were in the facility on time and [to] awaken them in the morning.

The judge further found that the complainants had no authority to hire, fire, or discipline employees, and that they did not have as their primary duty management of the company. On the contrary, according to the court's findings, "the evidence offered at trial established that they were line employees whose primary duty was counselling."

On the basis of these findings, the judge concluded as a matter of law that the five employees were not employed in a "bona fide executive or administrative capacity" within

---

1. A claim on behalf of one of the six employees was settled before trial, and this appeal relates only to the remaining five.

2. Our statement of the facts is taken from the trial judge's findings in his written order of September 16, 1992 and, to some extent, from the more detailed oral decision which he delivered from the bench on August 11, 1992.

3. Ms. McGaha also handled disbursements from Jones' petty cash fund.

4. Mr. Parker was responsible for maintaining time and attendance and leave records.

the meaning of D.C.Code § 36–220.3(a)(1) (1993) and the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* He ruled that each employee was entitled to overtime pay in a stipulated amount for the period in question.[5]

## II.

### THE REGULATORY BACKGROUND

Under District of Columbia law, employers are required to pay their employees time-and-a-half for work in excess of forty hours per week. D.C.Code § 36–220.2(c) (1993). The statute exempts from this overtime pay requirement "[a]ny employee employed in a bona fide executive, administrative or professional capacity . . . (as these terms are defined by the Secretary of Labor under [§ ]201 *et seq.* of the Fair Labor Standards Act." D.C.Code § 36–220.3(a)(1). Jones claims on appeal[6] that the employees fall within the administrative exemption, as "define[d] and delimit[ed]" in regulations promulgated by the Secretary of Labor pursuant to 29 U.S.C. § 213(a)(1).

The Secretary has adopted two alternative tests for determining whether an employee qualifies for the administrative exemption, a "short test" and a "long test." *See* 29 C.F.R. § 541.2 (1993). The "short test" applies when an employee has a salary of $250 per week or more. *See* 29 C.F.R. § 541.2(e)(2). The "long test" applies when the employee's salary is less than $250 per week (but more than $155 per week). *See* 29 C.F.R. § 541.-2(e)(1).[7] The nature of the employee's work determines whether the employee falls within the exemption under each of the two tests, but the short test is more favorable to the employer because, in order to meet the long test, the employer must establish certain additional facts not relevant to this appeal.

In order to show that an employee falls within the administrative exemption under either the "short test" or the "long test," the employer must demonstrate that the employee's "primary duty" (1) consists of "office or nonmanual work directly related to management policies or general business operations," 29 C.F.R. § 541.2(a)(1), and (2) includes work requiring "the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2).[8] The Secretary has defined the relevant phraseology in pertinent part as follows:

> (a) The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

> \* \* \* \* \* \*

> (c) As used to describe work of substantial importance to the management or operation of the business, the phrase . . . is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general business operations include those [whose] work affects policy or whose responsibility it is to execute it or carry it out.

29 C.F.R. § 541.205(a), (c).

## III.

### LEGAL DISCUSSION

■■■ The question whether an exemption from the Fair Labor Standards Act applies

---

**5.** The amount due to each employee, if that employee was eligible for overtime pay, is not in dispute.

**6.** Jones also claimed in the trial court that the employees were employed in an "executive" capacity, but has not pressed this contention on appeal.

**7.** The parties agree that the "short test" applies to the four employees who earned more than $250 per week—Ms. McGaha, and Messrs. Gates, Parker and Epps—and that the "long test" applies to Reverend Horton.

**8.** Under the "long test," an employee is exempt only if he or she "customarily and regularly exercises discretion and independent judgment." 29 C.F.R. § 541.2(b).

to a particular employee is one of law, and we review the trial court's legal ruling *de novo. Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 712–14, 106 S.Ct. 1527, 1529–30, 89 L.Ed.2d 739 (1986). The inquiry into an employee's eligibility for overtime pay, however, "remains intensely factbound and case specific." *Dalheim v. KDFW–TV,* 918 F.2d 1220, 1226 (5th Cir.1990). The underlying factual findings must be sustained unless they are clearly erroneous. Super.Ct.Civ.R. 52(a); *Icicle Seafoods,* 475 U.S. at 713, 106 S.Ct. at 1529–30; *Dalheim,* 918 F.2d at 1225–27; *see also O'Dell v. Alyeska Pipeline Serv. Co.,* 856 F.2d 1452, 1453 (9th Cir.1988). Jones makes no claim in the present case that the trial judge's factual findings were clearly erroneous. Rather, Jones contends that the judge misconstrued the statute and regulations and that he drew fallacious legal conclusions from the facts that he found.

■ In assessing these claims, we must first consider the nature of the legislation before us. The Supreme Court declared almost half a century ago that

> [t]he Fair Labor Standards Act was designed "to extend the frontiers of social progress" by "insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." Message of the President to Congress, May 24, 1934. Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people.

*A.H. Phillips Co., Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945); *see also Wirtz v. Ti Ti Peat Humus Co.,* 373 F.2d 209, 212 (4th Cir.) ("[r]emedial social legislation of this nature is to be construed liberally in favor of the workers whom it was designed to protect, and any exemption from its terms must be narrowly con-

strued"), *cert. denied,* 389 U.S. 834, 88 S.Ct. 37, 19 L.Ed.2d 94 (1967); *Brennan v. Greene's Propane Gas Serv., Inc.,* 479 F.2d 1027, 1032 (5th Cir.1973) (applying rule that exemptions from FLSA are to be narrowly construed against the employer). "This is not a mere technical point. Rather, the exceptions to the policy concerning minimum wages have been narrowly drawn to fit particular needs and are not to be enlarged by judicial construction." *Wirtz v. Jernigan,* 405 F.2d 155, 158 (5th Cir.1968). Moreover, the employer bears the burden of proving that an employee is exempt. *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 206, 86 S.Ct. 737, 737–48, 15 L.Ed.2d 694 (1966). These principles apply to the exemption from overtime on which Jones relies in this case. *Dalheim, supra,* 918 F.2d at 1224.

Jones has not shown that the activities of the five employees fall "plainly and unmistakably within [the] terms" of the administrative exemption. Specifically, Jones has failed to demonstrate that the employees' work "directly related to management policies or general business operations," within the meaning of 29 C.F.R. § 541.205(a).

In *Bratt v. County of Los Angeles,* 912 F.2d 1066 (9th Cir.1990), *cert. denied,* 498 U.S. 1086, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991), the question presented was whether Los Angeles County deputy probation officers and "Children Treatment Counselors," who supervised abused and neglected children, came within the FLSA exemption for "administrative employees" and were therefore ineligible to receive overtime pay. The county argued (as Jones argues here) that the plaintiffs had the responsibility to carry out the county's policies, and that their work was thus "directly related" to management policies or general business operations within the meaning of 29 C.F.R. § 541.205(c). The court, after discussing the regulations in some detail, emphatically rejected the county's argument:

> The test is whether the activities are directly related to *management policies* or *general* business operations. The district court correctly captured the essence of this

requirement by interpreting it to mean "the running of a business, and not merely ... the day-to-day carrying out of its affairs." Accordingly, to the extent that probation activities can be analogized to a business, the work of the DPO II Employees primarily involves the day-to-day carrying out of the business' affairs, rather than running the business itself or determining its overall course or policies.

*Id.* at 1070 (emphasis and ellipses in original).

In *Dalheim, supra,* the court held that television news producers did not fall within the exemption for administrative employees because their work did not relate to the overall policy or management of the television station which employed them, but was focused instead on the day-to-day service of producing the news. The court explained that

[t]he distinction § 541.205(a) draws is between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market.

*Dalheim, supra,* 918 F.2d at 1230 (footnote omitted). The court also noted that the news producers were not responsible for such administrative tasks as setting business policy, planning the long-term or short-term objectives of the news department, promoting the newscasts, or negotiating salary or benefits

with other department personnel. *Id.* at 1231.

Where, as here, a District of Columbia enactment specifically refers us to a federal statute and to the regulations promulgated pursuant to it, decisions of the federal courts construing the federal statute and regulations are especially persuasive authority. Jones' contentions in this case are difficult to reconcile with the decisions in *Bratt* and *Dalheim.* The trial judge explicitly found in this case that the five complainants were "line employees whose primary duty was counselling."[9] They did not hire, fire or discipline other employees, nor were they responsible for reviewing or evaluating the work of others. In a sense, of course, they performed work "of substantial importance to the ... operation of" Jones's business, 29 C.F.R. § 541.205(a), and "execute[d] ... or carr[ied] ... out" their employer's policy. *Id.* at 205(c). But so do many employees, often with some supervisory responsibility, whose duties nevertheless fall on the "production" side—the "day-to-day carrying out of the business affairs"—of the line accurately drawn by the federal decisions, *supra.* We therefore agree with the trial judge that the administrative exemption does not apply to the facts at hand.[10]

## IV.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is hereby

9. Although the trial judge made no findings on the subject in his discussion of the employees' discretion, counsel for Jones asserts—without citing to the record, *see* D.C.App.R. 28(e)—that it was undisputed that the employees had the authority to select youths for admission to the program. Our review of the record, unaided by the requisite citations, has revealed no such proof, although there was evidence that the employees were permitted to voice concerns regarding particular candidates for admission. In any event, under *Bratt* and *Dalheim,* Jones' assertion, even if borne out by the record, would not change the result.

10. At oral argument, counsel for Jones invited the court's attention to *International Ass'n of Fire Fighters, Alexandria Local 2141 v. City of Alexandria,* 720 F.Supp. 1230 (E.D.Va.1989). In that case, the court held in relevant part that a training lieutenant in the Alexandria Fire Department came within the FLSA's "administrative exemption" and therefore was not entitled to overtime pay. The training lieutenant, however, was "the officer responsible for the development and administration of all training programs for the fire department." *Id.* at 1234. The employee-claimants in this case had no comparable responsibilities. The remainder of the discussion in the

*Affirmed.*[11]

*Local 2141* case has no bearing on the issues presented here.

11. Jones contends that the trial judge committed reversible error by applying the "long test" instead of the "short test" to the four employees who earned more than $250 per week. In his oral findings, the judge did allude to one requirement of the "long test," namely that the employee may not devote more than 20% of his or her working hours to non-exempt work. *See* 29

C.F.R. § 541.2(d). The judge did not refer to this requirement in his written decision. Even if the judge did apply the "long test" to the four employees, however, this error could not have affected the result. The judge found, and we agree, that the employees' work was not "directly related to management policies or business operations." This is a requirement found both in the "short test" and in the "long test." *See* 29 C.F.R. §§ 541.2(a), 541.2(e)(2).