DISTRICT OF COLUMBIA, Appellant,

v.

Rudolph TARLOSKY, et al., Appellees.

Nos. 94–CV–1269 & 95–CV–376.

District of Columbia Court of Appeals.

Argued March 20, 1996.

Decided May 9, 1996.

Martin B. White, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Robert E. Deso, Washington, for appellees.

Before WAGNER, Chief Judge, SCHWELB, Associate Judge, and KERN, Senior Judge.

SCHWELB, Associate Judge:

▉ The Superior Court granted summary judgment to appellees, who are retired members of the Metropolitan Police Department (MPD), with respect to their claim that a legislatively approved 4.2% increase in the salaries of active members of the MPD, denominated a "retention allowance," entitled appellees ("retirees") to a corresponding 4.2% increase in the retirement payments pursuant to the "equalization" provision of the District of Columbia Police and Firefighters Retirement and Disability Act (the Act), D.C.Code §§ 4–601 to –634 (1994). On appeal, the District contends that the retention allowance was not a part of the active members' "scheduled rate of compensation" as that phrase is used in D.C.Code § 4–605(c), and that the equalization provision is therefore inapplicable. We affirm.

## I.

Section 4–605(c) provides in substance that each salary increase which is granted to active members of the MPD by law results in an automatic corresponding increase in retirees' pensions. The equalization provision reads as follows:

Each individual retired from active service and entitled to receive a pension relief allowance or retirement compensation under §§ 4–607 to 4–630 shall be entitled to receive, without making application therefor, with respect to each increase in salary, granted by any law which takes effect after the effective date of the District of Columbia Police and Firemen's Salary Act Amendments of 1972, to which he would be entitled if he were in active service, an increase in his pension relief allowance or retirement compensation computed as follows: His pension relief allowance or retirement compensation shall be increased by an amount equal to the product of such allowance or compensation and the per centum increase made by such law in the scheduled rate of compensation to which he would be entitled if he were in active service on the effective date of such increase in salary.

D.C.Code § 4–605(c).

On June 1, 1993, the Council of the District of Columbia approved and enacted into law a collective bargaining agreement between the District and the Fraternal Order of Police concerning police compensation. Article 36 of the agreement, entitled "Wages," concerns the police salary schedule. Article 37, entitled "Retention Differentials," provides for two forms of nonscheduled compensation, "base retention differential" and "retention allowance." Article 37, Section 2, which deals with the retention allowance, reads as follows:

Effective January 1, 1993, the employer shall pay each and every member of the bargaining unit who has completed or completes his/her probationary period a four and two tenths percent (4.2%) per annum retention allowance computed on his/her adjusted rate of pay prescribed in the Police Service salary schedule. Bargaining unit members are entitled to receive the retention allowance only as long as they are in active service. The retention allowance shall be considered basic pay for the purposes of retirement, life insurance and other forms of premium pay. The retention allowance shall be paid in the same manner as basic pay and shall be subject to the same withholding and deductions as basic pay.

The issue in this case is whether, pursuant to the equalization provision of D.C.Code § 4–605(c), the retirees are entitled to a 4.2% increase in their pensions to reflect the 4.2%

retention allowance received by active members. The trial court held that they are; the District contends that they are not.

## II.

The issue of statutory interpretation on which this case turns was recently decided adversely to the District by the United States District Court for the District of Columbia in *Lanier v. District of Columbia*, 871 F.Supp. 20 (D.D.C.1994) (Sporkin, J.). Although *Lanier* is not binding on this court, we find Judge Sporkin's rationale persuasive.

The plaintiffs in *Lanier,* who were retired members of the Secret Service, claimed that they were entitled to increases in their pensions to reflect "locality pay adjustments" that had been given to active members. The District, joined by the United States, contended that "locality pay adjustments" were not a part of the "scheduled rate of compensation" within the meaning of Section 4–605(c).

The court rejected the District's contentions. After explaining that the statute must be read as a whole, and that it is to be construed in light of the purpose and structure of the overall statutory scheme, the court stated:

> The plain terms of the statute indicate that the retirees are to receive commensurate percentage increases in their retirement compensation for *"each increase in salary, granted by any law ... to which he would be entitled if he were in active service...."* (emphasis added). The Court finds that the 4% locality increase is an "increase in salary granted by law" to which active members in the Washington, D.C. area are entitled. A plain reading of the phrase "increase in salary" would include any increase in the amount that a worker receives in pay.

*Id.* at 22. The court explicitly rejected the District's contention that the words "scheduled rate of compensation" were designed to restrict the scope of the equalization provision, holding instead that "this language is meant to be merely instructive as to how to apply the provision and is not meant to limit the coverage of the provision in any regard." [1] *Id.*

Judge Sporkin also analyzed the legislative history of the Act. He concluded:

> The House and Senate Committee Reports provide no hint that the "scheduled rate of compensation" phrase was meant to be limiting or that the equalization provision should in some way not cover across the board salary increases whether it be labelled locality pay or given some other designation. The Reports suggest percentage increases in salaries are to be given pro rata to the retirees as an alternative to so-called cost-of-living adjustments.

*Id.* at 23. The judge quoted from the Report of the House Committee on the District of Columbia:

> in the event of *future salary increases* for active members, the annuities of members then retired shall continue to be increased by a percentage not less than the percentage increase in salary for the class and step to which such retirees are assigned for annuity increase computation purposes.

H.R. No. 92–1180, Salary Increases for District of Columbia Police and Fireman, June 27, 1972, Title I, § 114.

*Id.* (emphasis added in *Lanier* ). The court thus concluded that the legislative history was consistent with the statutory language, and that it did not support the District's contentions.[2]

1. The District, in this connection, finds it significant that the words "scheduled rate of compensation" were added to the statute in 1972, and argues that their addition to a statute which did not contain them demonstrates their restrictive import. As Judge Sporkin explained in *Lanier,* however, a reading of the statute as a whole conclusively refutes such a construction. The equalization provision entitles retirees to increases in their pensions for "each increase in salary, granted by any law" to active members. To treat the addition of the words "scheduled rate of compensation" as a restriction on the equalization principle would frustrate the basic purpose of the equalization provision.

2. According to the District, the legislative history of the equalization provision shows that it was

Finally, the court noted that the locality increases for Secret Service Members (like the retention allowance in this case) were to be "considered part of basic pay for purposes of retirement as well as for purposes of life insurance and premium pay." *Id.* In light of these provisions, Judge Sporkin concluded that

> [t]he locality increase serves to increase "basic pay" and as such can be deemed an increase in the "scheduled rate of compensation." Since those who "retire tomorrow" will have the locality increase factored into their retirement pay, it can be argued that it would be unfair to treat differently those who "retired yesterday." This was the basis for enacting the equalization provision.

*Id.* (footnote omitted).

In sum, the court in *Lanier* rejected most of the contentions which the District is presenting here. The District did not, however, appeal from the court's decision.[3] The United States filed a notice of appeal but subsequently withdrew it. Counsel for the District conceded at argument in this case that,

at least with respect to the issue of statutory construction presently under discussion, the two cases are indistinguishable, and that in order to rule in the District's favor on that issue, we would be obliged to conclude that *Lanier* was incorrectly decided.

 Substantially for the reasons stated by Judge Sporkin in *Lanier,* we are unable to agree with the District's position in this case. We view the Act as remedial legislation which is to be interpreted liberally to achieve its purposes. *See, e.g., Jones & Assocs. v. District of Columbia,* 642 A.2d 130, 133 (D.C.1994). Purported restrictions on coverage, on the other hand, are strictly construed. *Id.*[4] To be sure, a change in language ordinarily connotes a change in meaning. *See, e.g., United States v. Brown,* 422 A.2d 1281, 1284 (D.C.1980). If, however, the addition to § 4–605(c) of the phrase "scheduled rate of compensation," or of certain other phrases,[5] was designed to restrict the applicability of the equalization provision, Congress certainly did not make that purpose clear. As Judge Sporkin correctly noted in *Lanier, supra,* 871 F.Supp. at 24, "[t]he

---

enacted "in a context that makes clear:

> (1) the distinction between scheduled and unscheduled compensation;
> (2) the fact that some forms of police compensation reasonably describable as 'salary' were typically not included in the salary schedule; and
> (3) the significance of these distinctions for police pensions."

Significantly, however, the District has cited nothing in the legislative history, and we have found nothing, to suggest that the 1972 legislation was designed to restrict the retirees' entitlements.

We agree with Judge Sporkin that the only language in the legislative history which is directly relevant to the issue presented here is the passage from the House Committee Report which we have quoted in the text. See p. 5, *supra.* The Report demonstrates that Congress intended retirees to receive increases in their pensions whenever active members received "salary increases." Article 37 provides that the retention allowance shall be considered basic pay for the purpose of retirement, that it shall be paid in the same manner as basic pay, and that it is subject to the same withholding and deductions as basic

pay. The retention allowance is therefore a salary increase for all practical and legal purposes.

3. The retirees do not make any claim that the District's failure to appeal in *Lanier* precludes it from litigating in this case issues which were argued and decided in *Lanier.*

4. We emphasize in this regard that retired District of Columbia officers, unlike civil service retirees, do not receive periodic cost of living adjustments. The increases which they receive through the equalization provision are thus their only protection against a rise in the cost of living. See *Lanier, supra,* 871 F.Supp. at 22.

5. The District also makes a somewhat complex argument relating to the addition to § 4–605(a) in 1972 of the phrase "[e]xcept as otherwise provided in this section." The District claims that this addition sheds light on the proper construction in § 4–605(c) of the words "scheduled rate of compensation." We decline to parse this contention in detail, except to note that the words on which the District relies do not clearly restrict the retirees' rights as declared in the legislation as a whole.

government cannot rely on courts to rewrite imprecise enactments," and this is especially true where, as here, the District is asking us to accord a narrow and grudging construction to remedial legislation.

*Affirmed.*[6]

6. The District also directs our attention to the provision in Article 37, Section 2 of the collective bargaining agreement to the effect that "[b]argaining unit members are entitled to receive the retention allowance only as long as they are in active service." The District argues, and counsel for the retirees concedes, that under the retirees' view of the law, the quoted language has no effect and, as a practical matter, the words "only as long as they are in active service" exclude nobody.

Like counsel, we are somewhat perplexed as to what this restrictive language in the agreement was designed to accomplish. Nevertheless, the retirees' right to benefit from the retention allowance is governed by the statutory equalization provision. The District has not claimed, either in the trial court or on appeal, that the Council's approval of the collective bargaining agreement constituted an implicit *pro tanto* repeal of Section 4–605(c) insofar as the retention allowance is concerned.