DISTRICT OF COLUMBIA, Appellant,

v.

David GOULD, et al., Appellees.

No. 03–CV–526.

District of Columbia Court of Appeals.

Argued May 26, 2004.

Decided June 17, 2004.

William J. Earl, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellant.*

James D. Keeney, with whom Edward H. Passman, Kristin D. Alden, and James M. Eisenmann, Washington, DC, were on the brief, for appellees.

Before SCHWELB and RUIZ, Associate Judges, and KING, Senior Judge.

SCHWELB, Associate Judge:

This class action was brought against the District of Columbia by former officers of the Metropolitan Police Department (MPD), all of whom retired on account of disability prior to February 15, 1980, but none of whom completed twenty years of active service. The retirees allege that they are entitled to a 5% "base retention differential" (BRD) pursuant to the "equalization" provision of the District of Columbia Police and Firefighters Retirement and Disability Act,[1] and, they assert, in conformity with a compensation settlement negotiated between the MPD and the Fra-

---

* At the time the appellant's brief was filed, the titles of Mr. Earl, Mr. Spagnoletti, and Mr. Schwab were Assistant Corporation Counsel, Corporation Counsel, and Acting Deputy Corporation Counsel respectively.

1. The equalization provision is currently codified at D.C.Code § 5–745(c) (2001) (formerly D.C.Code § 4–605(c) (1981)). It provides as follows:

Each individual retired from active service and entitled to receive a pension relief allowance or retirement compensation under subchapter I of this chapter shall be entitled to receive, without making application therefor, with respect to each increase in salary, granted by any law which takes effect after the effective date of the District of Columbia Police and Firemen's Salary Act

Amendments of 1972, *to which he would be entitled if he were in active service,* an increase in his pension relief allowance or retirement compensation computed as follows: His pension relief allowance or retirement compensation shall be increased by an amount equal to the product of such allowance or compensation and the per centum increase made by such law in the scheduled rate of compensation *to which he would be entitled if he were in active service* on the effective date of such increase in salary.

(Emphasis added.) This provision does not apply to MPD members who retired after February 15, 1980. *See* D.C.Code § 5–745(e) (2001) (formerly D.C.Code § 4–605(e) (1981)).

ternal Order of Police (FOP) and approved by the Council of the District of Columbia. *See* Resolution 10–48, 40 D.C. Reg. 3674–3679 (June 11, 1993).[2] The parties filed cross-motions for summary judgment, and on March 25, 2003, the trial judge granted the retirees' motion and denied the District's. Because, by its terms, the 5% BRD applies only to those retirees who have completed twenty years of service, and because the members of the plaintiff class have *not* completed twenty years, we must reverse the decision of the trial court and direct the entry of judgment in favor of the District.

## I.

■ Under the equalization provision, a retiree is entitled to each increase in salary granted by any law which takes effect after 1972 "to which he would be entitled if he were in active service." See note 1, *supra.* The retirees contend, the trial judge held, and we agree, that the 5% BRD is a "salary increase" within the meaning of the statute. *See District of Columbia v. Tarlosky*, 675 A.2d 77, 79–81 (D.C.1996). This was essentially the trial court's analysis in granting summary judgment in favor of the retirees; the 5% BRD is a salary increase, so the plaintiff class must be entitled to it.

■ The difficulty with applying this reasoning to the present appeal, however, is that the specific 5% BRD at issue here was created by the Council's 1993 resolution approving the compensation settlement between the MPD and the FOP. If there had been no compensation settlement resolution, there would be no 5% BRD. By the explicit and unambiguous terms of the compensation settlement resolution, the 5% BRD is available only to a retiree "who has completed or completes twenty years of service ...." See note 2, *supra.*[3] All of the members of the plaintiff class retired prior to completing the requisite twenty years. The 5% BRD thus has no application to the members of the plaintiff class.[4] If we were to construe the

---

2. Article 37, § 1 of this compensation settlement provides:

> Effective the first day of the first pay period beginning on or after October 1, 1990, a base retention differential (BRD) shall be continued. Each bargaining unit member in active service on or after the effective date of this Article *who has completed or completes, twenty (20) years of service under the Police Service salary schedule* shall receive, per annum, a five percent (5%) base retention differential computed on his/her rate of pay prescribed in the Police Service Salary Schedule. A bargaining unit member is entitled to receive the BRD only as long as he/she is in active service. The BRD shall be considered basic pay for the purposes of retirement, life insurance and other forms of premium pay. The BRD shall be paid in the same manner as basic pay and shall be subject to the same withholding and deductions as basic pay.
> (Emphasis added.)

3. It is noteworthy that the BRD provision of the compensation settlement here at issue has

far narrower application than the retention allowance which states, in pertinent part:

> Effective January 1, 1993, the employer shall pay *each and every member of the bargaining unit who has completed or completes his/her probationary period* a four and two tenths percent (4.2%) per annum retention allowance computed on his/her adjusted rate of pay prescribed in the Police Service salary schedule. Bargaining unit members are entitled to receive the retention allowance only as long as they are in active service.
> (Emphasis added.)

4. At oral argument, counsel for the retirees argued that the plaintiffs should be deemed to have completed twenty years of service. He cited D.C.Code § 4–615(a) (1981) (now codified in D.C.Code § 5–709(a) (2001)), which provides as follows:

> Except as provided in subsection (b) of this section, whenever any member coming under §§ 4–607 to 4–630 completes 5 years of

compensation settlement resolution as the retirees urge and as the trial judge did, then the inclusion in the resolution of the words "has completed or completes twenty years of service" would have no effect whatever on the meaning of the provision. Indeed, at oral argument, counsel for the retirees explicitly acknowledged that, under his interpretation, the resolution would have the same meaning without the limiting language. But as we stated in *Veney v. United States,* 681 A.2d 428, 433 (D.C. 1996) (en banc),

> "[a] basic principle [of statutory construction] is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous." *Thomas v. District of Columbia Dep't of Employment Servs.,* 547 A.2d 1034, 1037 (D.C.1988) (citations omitted).

Moreover, it appears to be undisputed that an officer of the MPD who retires today, after serving on active duty for a period of less than twenty years, would not be entitled to the 5% BRD. The rationale of the equalization provision was to prevent those who "retired yesterday" from being treated less favorably than those who "retire tomorrow." *Lanier v. District of Columbia,* 871 F.Supp. 20, 23 (D.D.C. 1994), *followed in Tarlosky,* 675 A.2d at

79–81. As the District points out, "this laudable rationale would be utterly defeated if the *Gould* class, these disability retirees of yesterday, were given entitlement to a 5% pension increase corresponding to the BRD adjustment, when a[n] MPD officer [who] retired on disability today with less than [twenty] years of active service would not have the [5%] BRD adjustment factored into his or her retirement pay." Further, under the terms of the compensation settlement resolution, an officer in active service who has served at least twenty years "is entitled to receive the BRD only as long as he [or] she is in active service." See note 2, *supra.* Thus, if the retirees were to receive the 5% BRD, they would be in a more advantageous position than active service officers with twenty years of service, as the latter group may lose the benefit upon retirement.

■ We held in *Tarlosky,* and we now reaffirm, that the equalization provision is "remedial legislation which is to be interpreted liberally to achieve its purposes." 675 A.2d at 80 (citation omitted). But as Judge Glickman has pointed out for the court in *Adjei v. District of Columbia Dep't of Employment Servs.,* 817 A.2d 179, 184 (D.C.2003), "liberal construction is not reconstruction"; *see also In re Te.L.,* 844

police or fire service and is found by the Mayor to have become disabled due to injury received or disease contracted other than in the performance of duty, which disability precludes further service with his department, such member shall be retired on an annuity computed at the rate of 2% of his average pay for each year or portion thereof of his service; provided, that such annuity shall not exceed 70% of his average pay; provided further, that the annuity of a member retiring under this section shall be at least 40% of his average pay.

Counsel relied on the references in the statute to 2% and 40% and suggested that all retirees are thus deemed to have served 40% divided by 2%, or twenty years.

This theory was not mentioned in the retirees' brief or in the trial judge's order, and the District had no notice of it. "Points not urged in a party's initial brief are treated as abandoned." *In re Shearin,* 764 A.2d 774, 778 (D.C.2000); *Cratty v. United States,* 82 U.S.App. D.C. 236, 243, 163 F.2d 844, 851 (1947). Even if the claim had been preserved, the compensation settlement resolution by its terms applies to a member who *"has completed or completes"* twenty years of service, and not to someone who is constructively "deemed" to have completed twenty years on the basis of § 4–615(a).

A.2d 333, 339 (D.C.2004) (quoting *Adjei*). We simply cannot read out of the compensation settlement resolution the limitation that the BRD applies only to those retirees who have twenty or more years of service.

■ The trial judge was apparently of the opinion (though she did not explicitly so state) that the equalization provision somehow overrides the explicit limitation in the Council-approved compensation settlement with respect to the question whether a retiree is entitled to the 5% BRD. We discern no conflict between the earlier statute and the later resolution. Even if there were such a conflict, "the more specific statute governs the more general one, and the later supersedes the earlier." *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment*, 831 A.2d 921, 943 (D.C.2003).

The retirees contend that our decision in *Tarlosky* and the trial court's decision in *Abbott v. District of Columbia*, C.A. No. 95–5668 (D.C.Super.Ct., July 23, 1996), support their claim. We disagree. *Tarlosky*, properly understood, supports the proposition (not here contested by the District) that the 5% BRD is a salary increase, but it takes us no further here. The *Tarlosky* case did not present at all any question regarding a retiree's eligibility for the 5% BRD, nor did it involve the language in the compensation settlement resolution which defines that eligibility. *Tarlosky* thus provides no solace to the retirees.

■ In *Abbott*, then-Superior Court Judge Henry H. Kennedy, Jr.,[5] held, on the authority of *Tarlosky*, that the plaintiffs, a group of individual retirees, were entitled to an increase in their retirement payments equal to the 5% BRD. Judge Kennedy's brief order does not reveal, however, whether the plaintiffs in *Abbott* had or had not served at least twenty years on active duty, and the court did not analyze or even mention the critical language of the compensation settlement resolution which, in our view, forecloses the claim asserted in this case by the members of the plaintiff class. Indisputably, in *Abbott*, the "judicial mind" did not pass on the question before us in this case, and the Superior Court's decision in *Abbott* does not constitute precedent with respect to that question. *See District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C.1996) (citations omitted).[6]

## II.

■ Because the District did not appeal from the decision in *Abbott*, the trial court held, and the retirees now assert, that the District is collaterally estopped from contesting the retirees' claim of eligibility for the 5% BRD. In general, under the doctrine of collateral estoppel or issue preclusion, once an issue of fact or law has been actually and necessarily determined against a party by a court of competent jurisdiction, that determination is conclusive on that party in any subsequent proceeding against that party based on a different cause of action. *Carr v. Rose*, 701 A.2d 1065, 1076 (D.C.1997). "Offensive use of collateral estoppel arises when a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost against anoth-

---

**5.** Judge Kennedy is now a United States District Judge.

**6.** "The rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question."

*Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994) (quoting *Fletcher v. Scott*, 201 Minn. 609, 277 N.W. 270, 272 (1938)). Moreover, this court obviously is not bound by decisions of the Superior Court.

er plaintiff." *Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 421–22 (D.C.1984); *see Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■■■ For issue preclusion to apply, however, the previously resolved issue must be identical to the one presented in the current litigation; similarity between the issues is insufficient. *Hutchinson v. District of Columbia Office of Employee Appeals,* 710 A.2d 227, 236 (D.C.1998). Moreover, as we recently reiterated in *Howard Univ. v. Lacy,* 828 A.2d 733 (D.C. 2003), "[t]he issue to be concluded ·... *must have been raised and litigated, and actually adjudged." Id.* at 736 (quoting *Ali Baba Co.,* 482 A.2d at 421 n. 6) (quoting 1B MOORE'S FEDERAL PRACTICE ¶ 0.443[1] (2d ed. 1982)) (emphasis added in *Lacy*). "Preclusion applies only to issues actually litigated and determined, and not to maters which might have been raised in the first proceeding, but were not." *Carr,* 701 A.2d at 1077 (quoting *Lebeau v. Lebeau,* 258 Pa.Super. 519, 393 A.2d 480, 483–84 (1978)) (footnote omitted).

So far as we can determine, the only question actually decided in the *Abbott* case was whether the 5% BRD was a pay increase to which the equalization provision applies. Judge Kennedy's reliance on *Tarlosky* demonstrates that this was the point at issue in *Abbott,* for *Tarlosky* had nothing at all to do with the compensation settlement provision that is central to the appeal now before us. The pivotal issue in the present case, on the other hand, is whether, assuming the applicability of the equalization provision, the plaintiffs—officers who retired on account of disability with less than twenty years of active service—are entitled to the pension increase sought, notwithstanding the language of the compensation settlement resolution which explicitly excludes them. Although

it may well be that the District could have raised this issue vis-a-vis at least some of the plaintiffs in the *Abbott* case, the point was not actually litigated or decided. Accordingly, the decision in *Abbott,* a case in which the present issue was not raised by the District or resolved by the court, cannot collaterally estop the District from raising that issue here, nor can it mandate adherence for all time to what we regard as a demonstrably erroneous construction of the law. *See Lacy,* 828 A.2d at 736.

■■ Moreover, "[d]ecisions of the Supreme Court ... make clear that estoppel can rarely be asserted against the government." *United States v. Vahlco Corp.,* 720 F.2d 885, 893 (5th Cir.1983) (citing *Schweiker v. Hansen,* 450 U.S. 785, 788–89, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981)). This is because "the [g]overnment is never disabled from protecting the public interest by reason of the past mistakes of its agents." *Udall v. Oelschlaeger,* 389 F.2d 974, 977 (D.C.Cir.1968) (citing *Utah Power & Light Co. v. United States,* 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917)). The case law has been aptly summarized as follows:

> Estoppels against the public are little favored, and they generally cannot be asserted against, and are not applicable to, the government or governmental entities. They should not be invoked except in rare and unusual, or exceptional, circumstances, and may not be invoked where they would operate to defeat the effective operation of a policy adopted to protect the public. They must be applied with circumspection, restraint, reluctance, and caution, especially where their application would have an adverse impact on the public fisc. The doctrine should be applied only in those special cases where the interests of justice, as variously stated, clearly require it. ·

31 C.J.S. *Estoppel and Waiver* § 168, pp. 648–49 (1996 & Supp. 2003) (footnotes and citations therein omitted).[7] We are satisfied, in light of the authorities cited, that even if the District could have raised in *Abbott* the issue now before us, this is not an appropriate case for applying the doctrine of offensive collateral estoppel against the District.

## III.

■ The trial judge described the question before the court in this case as "one of fundamental fairness for certain law enforcement officers who retired on disability prior to February 15, 1980." It may well be that, as a matter of legislative policy, the members of the plaintiff class, as well as officers who retired after February 15, 1980, ought to receive the 5% BRD. If so, the Council is at liberty so to provide by appropriate legislative enactment. To rewrite legislation in order to make it more fair or more reasonable, however, "transcends the judicial function." *See 1137 19th Street Assocs. v. District of Columbia*, 769 A.2d 155, 168 n. 18 (D.C.2001) (quoting *Iselin v. United States*, 270 U.S. 245, 250–51, 46 S.Ct. 248, 70 L.Ed. 566 (1926) (Brandeis, J.)). The relief here sought by the retirees may therefore be granted only by the Council of the District of Columbia. Accordingly, the decision of the trial court is reversed, and the case is remanded to the trial court with directions to enter judgment in favor of the District.

*So ordered.*

---

7. Most of the cases involve equitable estoppel rather than collateral estoppel, but the underlying principle logically applies in the present circumstances. The District should not be compelled to pay out legally unauthorized pension money simply because its attorneys failed to raise the present issue in *Abbott*.