# District of Columbia
# Court of Appeals

**Nos. 14-AA-1401, 14-AA-1403 & 14-AA-1404**

DISTRICT OF COLUMBIA OFFICE OF TAX & REVENUE,
Petitioner,

v.                                                    **OTR-49-11**

EXXONMOBIL OIL CORPORATION, *et al.,*
Respondents.



On Petition for Review of an Order
of the District of Columbia Office of Administrative Hearings

BEFORE: THOMPSON and MCLEESE, *Associate Judges;* and KING, *Senior Judge.*

## J U D G M E N T

This case came to be heard on the administrative record, a certified copy of the agency hearing transcript and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the orders issued by the Office of Administrative Hearings, granting the oil companies summary judgment, are vacated, and the case is remanded for further proceedings consistent with this opinion.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: June 30, 2016.

Opinion by Senior Judge Warren R. King.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

FILED 6/30/16
District of Columbia
Court of Appeals

**DISTRICT OF COLUMBIA COURT OF APPEALS**

Nos. 14-AA-1401, 14-AA-1403 & 14-AA-1404

Julio Castillo
Clerk of Court

DISTRICT OF COLUMBIA OFFICE OF TAX & REVENUE, PETITIONER,

v.

EXXONMOBIL OIL CORPORATION, *et al*., RESPONDENTS.

On Petitions for Review of Orders of the
District of Columbia Office of Administrative Hearings
(OTR-49-11)

(Argued February 9, 2016                    Decided June 30, 2016)

*Richard S. Love*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd A. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for petitioner.

*M. Miller Baker*, with whom *Stephen P. Kranz*, *Diann L. Smith*, and *Katie Bukrinsky* were on the brief, for respondents.

Before THOMPSON and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

KING, *Senior Judge*:  Petitioner District of Columbia Office of Tax and Revenue ("OTR") petitions for review of three orders issued by the Office of Administrative Hearings ("OAH") that grant summary judgment to respondents Exxon Mobil Oil Corp., Shell Oil Co., and Hess Corp. (collectively, the "oil

companies") and reverse OTR's Notices of Proposed Assessment of Tax Deficiency against them. OTR contends that OAH's grant of summary judgment to the oil companies is premised on the erroneous application of offensive[1] non-mutual collateral estoppel against OTR. In *United States v. Mendoza*, 464 U.S. 154 (1984), the Supreme Court held that offensive non-mutual collateral estoppel does not, as a matter of law, apply against the federal government. Citing *Mendoza*, OTR contends that offensive non-mutual collateral estoppel should not, as a matter of law, ever apply to the District government or its entities, such as OTR. Alternatively, OTR argues that OAH abused its discretion in applying offensive non-mutual collateral estoppel in the circumstances of these cases. For

---

[1] It is not entirely clear whether these cases are properly viewed as involving offensive rather than defensive non-mutual collateral estoppel. Although one could view these cases as beginning when the oil companies filed their petitions at OAH, one could also view them as beginning when OTR issued the Notices of Proposed Assessment of Tax Deficiency to the oil companies. On the former view, these cases involve offensive non-mutual collateral estoppel, whereas on the latter view, they involve defensive non-mutual collateral estoppel.

None of the parties addressed this distinction during the course of this litigation. In their separate motions for summary judgment, all three of the oil companies argued that OAH should apply offensive non-mutual collateral estoppel against OTR. Similarly, in its oppositions to the oil companies' motions, OTR argued that OAH should not apply offensive non-mutual collateral estoppel against OTR. Further, in their briefs to this court, the oil companies and OTR focus their arguments about collateral estoppel on whether OAH properly applied offensive non-mutual collateral estoppel. As a result, we proceed in this opinion on the assumption that these cases involve offensive non-mutual collateral estoppel.

the reasons that follow, we conclude that OAH did abuse its discretion in applying offensive non-mutual collateral estoppel against OTR and thereby erred in granting the oil companies summary judgment. We therefore vacate OAH's orders and remand for further proceedings.

## I.

Between 2011 and 2012, OTR issued a Notice of Proposed Assessment of Tax Deficiency for alleged underpayment of corporate franchise taxes for tax years 2007–2009 to each of the oil companies. Each oil company filed a petition in OAH protesting the proposed assessment it received. Their protests were based in part on their shared view that the methodology used by OTR to calculate their alleged tax deficiencies (the "Chainbridge methodology") was contrary to applicable law. OTR and the oil companies agreed to a stay of the proceedings by OAH pending resolution of similar challenges by other companies to tax deficiency assessments issued by OTR that also utilized the Chainbridge methodology.[2] Thereafter, OAH lifted the stay at the oil companies' request to

---

[2] In particular, when Exxon and Shell filed their protests, OTR was already involved in litigation against Microsoft Corp. in OAH. *See generally Microsoft Corp. v. Office of Tax & Revenue*, No. 2010-OTR-12 (D.C. Office of Admin. Hearings May 1, 2012). The *Microsoft* case ended after OTR voluntarily

(continued…)

allow them to file motions for summary judgment.

In their motions for summary judgment, the oil companies argued, *inter alia*, that OTR was collaterally estopped from defending the legality of the Chainbridge methodology by OAH's ruling in the *Microsoft* case. See *supra* note 2; *see also Microsoft Corp.*, *supra* note 2, No. 2010-OTR-12 at *18-*27. Thereafter, OAH specifically directed OTR to "file . . . brief[s] addressing the issue of collateral estoppel" in each of the proceedings and scheduled oral argument to deal solely with that issue. OTR complied with OAH's order, submitting motions addressing collateral estoppel in which it argued (1) that offensive non-mutual collateral estoppel does not apply to the District government or its entities or, in the alternative, (2) that it would be unfair and an abuse of discretion to apply offensive non-mutual collateral estoppel in these cases, citing the fairness factors identified by this court in *Modiri v. 1342 Rest. Grp., Inc.*, 904 A.2d 391, 400 (D.C. 2006).

───────────

(…continued)
dismissed its petition for review in this court of OAH's order granting Microsoft summary judgment on the ground that OTR's use of the Chainbridge methodology was "arbitrary, capricious, and unreasonable." *Id.*

Hess, which filed its protest later than Exxon and Shell, sought a stay pursuant to a separate case involving a similar challenge by BP Products North America Inc. to the Chainbridge methodology in the Superior Court. *See generally BP Prods. N. Am. Inc. v. Office of Tax & Revenue*, D.C. Super. Ct. No. 2011 CVT 10619 (March 31, 2014). That case ended with a stipulated dismissal following settlement.

Following oral argument on the oil companies' motions, OAH issued nearly identical orders in all three cases granting the oil companies summary judgment and reversing the three Notices of Proposed Assessment of Tax Deficiency issued by OTR. The orders were premised on OAH's conclusion that its ruling in the *Microsoft* case collaterally estopped OTR from defending the legality of its methodology for calculating the oil companies' alleged tax deficiencies. OTR timely filed petitions for review in this court of OAH's orders, which this court consolidated *sua sponte*.

**II.**

In these cases, we must determine whether OAH properly applied offensive non-mutual collateral estoppel against OTR. At first glance, it appears that in making this determination, we are bound by our decision in *District of Columbia v. Gould*, 852 A.2d 50 (D.C. 2004), in which we directly addressed the applicability of offensive non-mutual collateral estoppel against the District and its entities, such as OTR.[3] However, the oil companies argue that we are not bound by *Gould*'s

---

[3] None of the parties cited *Gould* in the proceedings before OAH or in their briefs to this court. This court, having recognized that we previously addressed in

(continued…)

discussion of this issue.[4] Therefore, before we can decide the ultimate question presented, we must address the antecedent question of whether we are bound by *Gould*'s discussion.

## A.

*Gould* involved a claim against the District brought by a class of former Metropolitan Police Department (MPD) officers who "retired on account of disability . . . but [did not] complete[] twenty years of active service." 852 A.2d at 52. The officers sought payment of a 5% "'base retention differential' (BRD) pursuant to" the applicable statute and allegedly "in conformity with a compensation settlement negotiated between the MPD and the Fraternal Order of Police (FOP) and approved by the Council of the District of Columbia." *Id.* at 52-53. The terms of that settlement provided, in relevant part, that only officers "who

_____

(…continued)
*Gould* the question presented in these petitions for review, issued an order *sua sponte* directing the parties to address *Gould* at oral argument. The parties complied, completing the record for this decision.

[4] In addressing *Gould*, counsel for OTR mainly emphasized that if *Gould* applies, it does not preclude this court from adopting *Mendoza* because it did not discuss *Mendoza* at all. Beyond that, counsel for OTR focused argument on why we should adopt *Mendoza*.

ha[ve] completed or complete[] twenty (20) years of service under the Police Service salary schedule shall receive [the 5% BRD]." *Id.* at 53 n.2 (emphasis omitted). This plain language led us to observe that because "[a]ll of the members of the plaintiff class retired prior to completing the requisite twenty years[, t]he 5% BRD [in the settlement] has no application to the members of the plaintiff class." *Id.* at 53.

In an effort to overcome this plain language, the officers relied on a prior decision of this court, *District of Columbia v. Tarlosky*, 675 A.2d 77 (D.C. 1996), and a decision of the Superior Court based on *Tarlosky*, *Abbott v. District of Columbia*, C.A. No. 95-5668 (D.C. Super. Ct. July 23, 1996), to argue that the District was "collaterally estopped from contesting the retirees' claim of eligibility for the 5% BRD." *Gould*, *supra*, 852 A.2d at 55. We rejected the officers' argument on two grounds.

Our first ground for rejection relied on the proper application of collateral estoppel. We observed that collateral estoppel (whether mutual or non-mutual) can apply only if "the previously resolved issue [is] identical to the one presented in the current litigation" and then only if "the issue to be concluded [was] raised and litigated, and actually adjudged." *Gould*, *supra*, 852 A.2d at 56 (internal

alterations, citations, emphasis, and quotation marks omitted). We observed further that the issue addressed in *Tarlosky* and *Abbott* (whether "the 5% BRD is a salary increase") was not the same as the issue raised by the plaintiff class in *Gould* (whether they were "eligib[le] for the 5% BRD"), and also that, "in *Abbott*, the 'judicial mind' did not pass on the question before us in this case." *Id.* at 55-56. Finally, we observed that "[a]lthough it may well be that the District could have raised this issue vis-à-vis at least some of the plaintiffs in the *Abbott* case, the point was not actually litigated or decided." *Id.* at 56. We therefore held that "the decision in *Abbott*, a case in which the present issue was not raised by the District or resolved by the court, cannot collaterally estop the District from raising that issue here . . . ." *Id.*

Our second ground for rejecting the officers' collateral estoppel argument rested on broader principles. We noted that "decisions of the Supreme Court make clear that estoppel can rarely be asserted against the government . . . because the government is never disabled from protecting the public interest by reason of the past mistakes of its agents." *Id.* (internal alterations and quotation marks omitted) (citing, *inter alia*, *Schweiker v. Hansen*, 450 U.S. 785, 788-89 (1981), and *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917)). We further noted:

> Estoppels against the public are little favored, and they generally cannot be asserted against, and are not applicable to, the government or governmental entities. They should not be invoked except in rare and unusual, or exceptional, circumstances, and may not be invoked where they would operate to defeat the effective operation of a policy adopted to protect the public. They must be applied with circumspection, restraint, reluctance, and caution, especially where their application would have an adverse impact on the public fisc. The doctrine should be applied only in those special cases where the interests of justice, as variously stated, clearly require it.

*Id.* at 56-57 (quoting 31 C.J.S. *Estoppel and Waiver* § 168, at 648-49 (1996 & Supp. 2003)). In light of these principles, we held "that even if the District could have raised in *Abbott* the issue now before us, this is not an appropriate case for applying the doctrine of offensive collateral estoppel against the District." *Id.* at 57.

**B.**

The oil companies contend that our discussion of general principles underlying application of offensive non-mutual collateral estoppel to the District and its entities is not binding, but rather is better read as dicta. In support of this contention, they point to a footnote contained in that discussion, in which we observed, "The District should not be compelled to pay out legally unauthorized

pension money simply because its attorneys failed to raise the present issue in *Abbott*." *Gould*, *supra*, 852 A.2d at 57 n.7. The oil companies argue that this footnote appears to link our discussion of the general applicability of offensive non-mutual collateral estoppel against the District to our initial holding;[5] consequently, they argue, that discussion is not and should not be viewed as an independent, binding holding. In addition, the oil companies point out that (1) we do not explicitly distinguish between mutual and non-mutual collateral estoppel in our discussion in *Gould* and (2) our rationale for limiting the application of collateral estoppel against the District applies equally in both situations. According to the oil companies, this would "represent a dramatic departure from settled law," as it would require litigants against the District to show exceptional circumstances to justify invoking even mutual collateral estoppel against the District. Thus, the oil companies' logic seems to be that because our discussion of non-mutual collateral estoppel in *Gould* appears to (1) be interlinked with our alternative holding in *Gould* and (2) have potentially dramatic implications for previously settled law, that discussion is better interpreted as non-binding dicta than as an independent, binding holding.

---

[5] *I.e.*, that "the decision in *Abbott*, a case in which the present issue was not raised by the District or resolved by the court, cannot collaterally estop the District from raising that issue here." *Gould*, *supra*, 852 A.2d at 56.

## C.

We are not persuaded that *Gould*'s discussion of the general applicability of offensive non-mutual collateral estoppel against the District is dicta, rather than an independent, alternative holding binding this division of the court. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). Although we do not disagree with the oil companies' first argument that our discussion of the application of non-mutual collateral estoppel against the District in *Gould* is linked with our alternative holding, that link does not make that discussion dicta. Both holdings in *Gould* do rely on the fact that the District's attorneys did not raise in *Abbott* the issue that we faced in *Gould*. In our first holding, that fact was dispositive because it meant that the officer-appellees failed to satisfy one of the basic elements of collateral estoppel because the issue they sought to estop the District from re-litigating had not been "actually litigated" in *Abbott*. See *infra* note 8. By contrast, in our second, alternative holding, the fact that the District's attorneys did not raise in *Abbott* the issue that we faced in *Gould* was dispositive for the separate reason that we did not want to estop the government from litigating the issue based on a past mistake of its attorneys. In essence, then, our alternative holding in *Gould* was that, even *if* the District's attorneys' failure to raise in *Abbott* the issue that we

faced in *Gould could* justify estopping the District, we would not estop the District based on the authorities we cited, including Supreme Court precedent and a treatise summarizing relevant case law, that indicated that "[e]stoppels against the public are little favored" and "should not be invoked except in rare and unusual, or exceptional, circumstances . . . ." 852 A.2d at 56. We thus see no reason to interpret our second holding in *Gould* as dicta simply because of its link to our first holding.[6]

Furthermore, we are not persuaded by the oil companies' second argument that we should interpret our alternative holding in *Gould* as dicta because if we interpret it as a binding holding it has potentially dramatic implications for previously settled law concerning mutual collateral estoppel. We do not disagree in principle that *Gould* may have implications for mutual collateral estoppel that we did not contemplate. However, we were not required to consider those

---

[6] Our discussion in footnote 7 of *Gould*, which the oil companies emphasize to support their argument, does not change our conclusion. When we said, "The District should not be compelled to pay out legally unauthorized pension money simply because its attorneys failed to raise the present issue in *Abbott*," what we essentially meant was that it would be unfair in the absence of exceptional circumstances to leave the District with a legally unauthorized bill in *Gould* just because its attorneys failed to challenge the legality of a similar bill in *Abbott*. Although the specific concern identified in the footnote—failure of the District's agents—is not applicable in the cases *sub judice*, our general concern with the fairness of applying offensive non-mutual collateral estoppel against the District in the absence of exceptional circumstances, which is also articulated in the footnote, is at the heart of what we must decide here.

implications in *Gould* because the facts of *Gould* were limited to the application of offensive non-mutual collateral estoppel against the District. To put it in *Gould*'s terms, "the 'judicial mind' did not pass" on the question of how our holding would affect the application of mutual collateral estoppel against the District, and thus our holding in *Gould* "does not constitute precedent with respect to that question." 852 A.2d at 55; *see also Richman Towers Tenants' Ass'n, Inc. v. Richman Towers LLC*, 17 A.3d 590, 610 (D.C. 2011) ("The rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." (internal alterations omitted) (quoting *District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C. 1996))).[7] The judicial mind did, however, pass on the precise question we face here: whether offensive *non-mutual* collateral estoppel applies to the District of Columbia and its entities. As a result, we conclude that our answer to that question in *Gould* is binding on this division of the court, *see M.A.P.*, *supra*, 285 A.2d at 312, and therefore guides our further analysis.

_____

[7] As the cases *sub judice* do not involve the application of mutual collateral estoppel against the District or its entities, we need not further explore this question. We note, however, that a situation involving mutuality between the District and another litigant has some serious fairness concerns for the litigant pointing in favor of applying collateral estoppel that do not exist in the absence of mutuality. Moreover, the Supreme Court has approved the use of mutual collateral estoppel against the federal government notwithstanding *Mendoza*. *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 174 (1984).

**III.**

Having determined that we are bound by *Gould*'s discussion of the applicability of offensive non-mutual collateral estoppel against the District, we must determine the proper resolution of OTR's petitions for review. Ordinarily, "[p]roper application of non-mutual offensive collateral estoppel requires a two-step inquiry." *In re Wilde*, 68 A.3d 749, 759 (D.C. 2013) (quoting *Modiri*, *supra*, 904 A.2d at 395). "In the first step, the trial court must determine whether a case meets the traditional requirements for invoking collateral estoppel."[8] *Id.* The second step involves a discretionary balancing of a long list of factors to "determin[e] whether the offensive use of non-mutual collateral estoppel would be fair." *Id.* at 760 (quoting *K.H., Sr. v. R.H.*, 935 A.2d 328, 333-34 (D.C. 2007)); *see*

---

[8] Collateral estoppel

> renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Washington Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1283 (D.C. 1990). OTR does not challenge OAH's conclusion that these cases satisfy these requirements.

*also id.* at 760-61 (listing factors). However, in cases involving the assertion of offensive non-mutual collateral estoppel against the District or one of its entities, *Gould* adds a third step to the inquiry. "Estoppels against the public are little favored" and "should not be invoked except in rare and unusual, or exceptional, circumstances . . . , especially where their application would have an adverse impact on the public fisc." *Gould*, *supra*, 852 A.2d at 56. Thus, when the party against whom offensive non-mutual collateral estoppel is asserted is the District or one of its entities, courts and administrative bodies should apply the doctrine "only in those special cases" involving "exceptional[] circumstances," "where the interests of justice . . . clearly require it."[9] *Id.*

Whether such exceptional circumstances exist in these cases is a matter for OAH to decide in the first instance, subject to our deferential review. *Cf. Modiri*, *supra*, 904 A.2d at 400 (applying abuse-of-discretion standard of review to trial court's ruling as to fairness factors). None of the parties cited *Gould* to OAH, see

---

[9] We emphasize that this exceptional circumstances inquiry is distinct from the fairness inquiry. This does not mean that the fairness factors listed in *Wilde* must be ignored when conducting the exceptional circumstances inquiry. However, an affirmative finding of fairness does not dictate an affirmative finding of exceptional circumstances, and vice versa. Thus, OAH's determination regarding the fairness factors in these cases does not answer the different question of whether there are exceptional circumstances warranting application of offensive non-mutual collateral estoppel against OTR.

*supra* note 3, and OAH did not address the question of whether exceptional circumstances exist in these cases. As a result, OAH's application of offensive non-mutual collateral estoppel against OTR was an abuse of discretion, *see Ford v. Chartone, Inc.*, 908 A.2d 72, 84 (D.C. 2006) ("A discretionary judgment must be founded upon correct legal principles, and a court by definition abuses its discretion when it makes an error of law." (internal alterations, citations, and quotation marks omitted)),[10] and we therefore must remand the case for OAH to address this question.

## IV.

In sum, we hold that *Gould*'s discussion of the applicability of offensive non-mutual collateral estoppel against the District and its entities is binding and applies in these cases and that OAH's decision to apply offensive non-mutual collateral estoppel against OTR without accounting for *Gould*'s discussion was an

---

[10] This holding renders it unnecessary for us to address the oil companies' alternative argument that if *Gould* applies, they have demonstrated the requisite exceptional circumstances justifying application of offensive non-mutual collateral estoppel against OTR in these cases. *See Ford, supra,* 908 A.2d at 85 ("Ordinarily, we may not salvage an unsound discretionary ruling by substituting our own reasons for those of the trial court."). The oil companies are free to make that argument on remand, and we express no opinion here on the merits of that contention.

abuse of discretion. Consequently, OAH erred in granting the oil companies summary judgment.[11]

Accordingly, for the foregoing reasons, we vacate the orders issued by OAH granting the oil companies summary judgment and remand for further proceedings consistent with this opinion.[12]

*So ordered.*

---

[11] In so holding, we express no view as to how OAH should decide the oil companies' summary judgment motions on remand after conducting the exceptional circumstances inquiry. Furthermore, at this stage in the proceedings, considering neither OAH nor OTR addressed the merits of the underlying dispute in these cases (*i.e.*, whether the Chainbridge methodology for assessing tax deficiencies is valid) in the proceedings below, we decline the oil companies' invitation to affirm OAH's orders on the alternate ground that the Chainbridge methodology is faulty as a matter of law.

[12] In light of this outcome, we decline to address OTR's further arguments that (1) *Gould* does not foreclose application of *Mendoza* in the District, see *supra* note 4, and (2) assuming *Gould* does not foreclose application of *Mendoza*, we should apply *Mendoza* to hold that non-mutual collateral estoppel does not apply to the District or its entities—such as OTR—as a matter of law.